### H. C. Ghent v. Mrs. A. F. Boyd et al.

Decided January 19, 1898.

**1. Divorce—Community Property—Creditors—Judgment.**

The community estate while in the hands of either the husband or wife is liable for the community debts, and can not be transferred to the wife by voluntary act nor by decree of divorce so as to relieve the property from such liability, except upon a consideration such as the use by one of the separate property or funds of the other.

**2. Same.**

A decree of divorce which fixed upon community real property a lien in favor of the wife in excess of the husband's interest therein by reason of other community funds received by the husband could not take precedence of the lien of a recorded judgment against the husband for a community debt recovered and duly filed while the divorce suit was pending.

**3. Divorce—Costs—Community Property—Creditors.**

The lien upon the community property for costs of a suit for divorce is superior to that of a judgment creditor who has recovered upon a community debt in a suit brought while the divorce proceedings were pending.

**4. Same—Interest.**

Judgments for costs do not bear interest; but the lien as to costs paid by the wife in a divorce suit will include interest from the date of such payment.

**5. Judgment Lien—Homestead.**

Abstract of a judgment duly filed attaches its lien to property then occupied as a homestead, in case of its subsequent abandonment.

ERROR from Bell. Tried below before HON. W. A. BLACKBURN.

*John B. Durrett* and *Winbourn Pearce,* for plaintiff in error.

*A. M. Monteith,* for defendants in error.

FISHER, CHIEF JUSTICE.—This is an action in trespass to try title, brought by plaintiff in error Ghent against Mrs. A. F. Boyd and her husband J. W. Boyd, to recover lot 1 in block 86, in the town of Belton. Mrs. Boyd, who was formerly Mrs. Trigg, in her answer, alleged that plaintiff Ghent asserted a pretended title to the land by virtue of a purchase thereof by him at execution sale under a judgment obtained in his favor against her former husband C. L. Trigg, and charged that at the time the land was sold under execution it was her homestead and not subject to forced sale, she at the time being the head of a family.

It is further averred that she has a superior right to and lien upon the land in controversy, to any claim of the plaintiff; that, in a divorce suit between her and her former husband, C. L. Trigg, the land in question together with other property belonging to her and her husband was sought to be partitioned, and in which was adjudged a liability in her favor against the interest of her former husband, Trigg, in and to any of the community property owned by him, and that the judgment of the court rendered in that case was in her favor, granting her a divorce and adjudging against the property in controversy (which was held in that case to be community property) a lien in her favor for certain moneys owing her by Trigg, and charging against the interest of Trigg in the property in controversy the costs of the litigation, which arose in the divorce suit, and for which judgment was rendered against Trigg.

The court below charged the jury as follows: "In regard to the question of separate property, you are instructed that the record evidence in this case establishes the title in the property at and prior to said judgment, as being community property, and you must so consider it.

"And it is immaterial, whether it was a homestead or not. If it was, as soon as the divorce was granted, Trigg's portion became liable for his debts. And if plaintiff's lien is superior to defendant's, then you will find for plaintiff.

"You are instructed that the record evidence in this case shows that at the time plaintiff's lien took effect, to wit, on the 18th day of December, 1888, said divorce suit was pending and had been pending since the —— day of March, 1888. The decrees in said divorce suit, dated on the 19th day of December, 1888, and on the 23d day of January, 1889, which declare the premises in dispute to be community property of said C. L. Trigg and the defendant, Mrs. Boyd, at the same time declared a lien on C. L. Trigg's interest in the same, to the amount of four hundred and

sixty-three dollars and thirty-five ($463.35) cents. Interest on said sum is allowed at the rate of eight per cent per annum.

"Said decrees also establish a lien in behalf of said Mrs. Boyd for certain costs specified therein, and the amount of which the record evidence shows to have been $646.44 on the 5th day of April, 1889, and to have been paid by defendant, Mrs. Boyd, prior to the 1st day of January, 1890, on which last mentioned sum interest is allowed at the rate of eight per cent from 1st day of January, 1890, to the 11th day of July, 1892, and at the rate of six per cent since July 11, 1892.

"These two amounts, that is the item for $463.35 and the item for $646.44, are prior and superior liens to the one established by plaintiff, as they take effect from the date of the filing of the suit of Ann F. Trigg v. C. L. Trigg for a divorce, on the ——— day of March, 1888, while plaintiff's claim takes effect from the date of filing his abstract of judgment, on the 18th day of December, 1888.

"Now if these two claims of defendant, Mrs. Boyd, exceed the value of C. L. Trigg's interest in said community property, then there was nothing that plaintiff's said lien could subject to the payment of his said judgment, and if you so believe, you will find for defendants.

"You will say by your verdict what the present value of the property in dispute is, according to the testimony before you."

In response to this charge, the jury returned the following verdict: "We the jury find for defendant, and say by our verdict that the principal and interest is $1735.18, and value the property at $2000." Upon which the court rendered judgment as follows:

"It is therefore ordered, adjudged, and decreed by the court that defendant, Mrs. A. F. Boyd, who is joined in this cause pro forma by her husband, J. W. Boyd, has just and subsisting claims against her former husband, C. L. Trigg, amounting to the sum of seventeen hundred and thirty-five and 18-100 dollars ($1735.18), which are secured in their payment by a valid and subsisting lien on the land in controversy in this cause, to wit, suituate, lying, and being in the county of Bell and State of Texas, within the corporate limits of the city of Belton, and a part of the M. F. Connell league, lying south and adjoining Avenue Street, and west of a lot owned by James P. Coop, north of and adjoining Noland's Creek, and east of lot owned by Willie and Laura McGuire, and being known as lot No. 1, block 86, of the city of Belton; said lot was conveyed by A. G. Parnell to C. L. Trigg, by deed dated December 21, 1882, and recorded in deed records of Bell County, Texas, Book 41, pages 201 and 202; which said claims against C. L. Trigg and the foreclosure of said lien on said land, were established by a former valid, subsisting judgment of this court, wherein Mrs. Ann Frances Trigg was plaintiff and C. L. Trigg was defendant, which said lien is a preference lien on the land in controversy in this cause, above described, to the lien and claim of plaintiff in this cause on said land, by virtue of his judgment against C. L. Trigg, and the filing and indexing of his abstract of judgment and his levy of execution on, and sale of said land, as the property

·of C. L. Trigg; and it further appearing to the court that the value of said land and premises in controversy in this cause, as fixed by the verdict of this jury, is two thousand dollars, and that Mrs. A. F. Boyd's claims on said land, secured by a preference lien, as aforesaid, at the time when H. C. Ghent acquired any right, lien, claim or title thereto, exceeds the full value of any interest C. L. Trigg had therein, and which does still so exceed the value of any interest H. C. Ghent has therein, as claimant of the former rights of C. L. Trigg. It is, therefore, adjudged and decreed by the court that plaintiff, H. C. Ghent, recover nothing by his suit, and that defendants A. F. Boyd and J. W. Boyd go hence without day, discharged, and that said defendants recover judgment against plaintiff H. C. Ghent, establishing her claims, which are secured by a judgment and preference lien against the premises in controversy for the sum of seventeen hundred and thirty-five and 18-100 dollars ($1735.18), bearing interest from this date at the rate of 6 per cent per annum, and that she may have her order of sale, and that said premises may be sold, as under execution, and the proceeds applied to the satisfaction and discharge of her claims against said premises, but as to said claims against C. L. Trigg to be hereinafter enforced, and any costs arising from the execution of said order of sale, the same are in no sense a personal judgment against H. C. Ghent, plaintiff herein.

"It is further ordered that the officers of court shall have their execution against each party respectively for the costs by him or them in this behalf incurred."

It appears from the facts that in March, 1888, Mrs. Boyd, formerly Mrs. Trigg, sued her then husband, C. L. Trigg, for divorce, and in that suit alleged that the property in controversy was her homestead and her separate property, and also alleged that Trigg was indebted to her, by reason of the use by him of funds and property belonging to her in her separate and individual right, and that he had used and appropriated to his own use much of the community estate owned by them.

On the 19th of December, 1888, the jury in the divorce suit found that the property in controversy was community property; and the court then, at that time, and by a subsequent decree, found that the land in controversy was community property of Mrs. Trigg and her husband, and found that Trigg was indebted to Mrs. Trigg in the sum of $353.35, which arose from the fact that Trigg had received from the community property an amount thereof in value equal to this sum in excess of one-half of his interest therein, and rendered judgment in her favor against Trigg for that sum. The court in that case also decreed against Trigg a judgment for the costs, which appear from the facts to be $644.79; and in the alternative, a judgment against Mrs. Trigg for these costs. The judgment also finds that $110 had been paid by Mrs. Trigg as a part of the costs in the divorce suit. For all of these several amounts mentioned, the judgment in the divorce suit established a lien in favor of Mrs. Trigg against the interest of her husband, Trigg, in the community property in controversy.

It further appears that during the pendency of the divorce suit plaintiff in error Ghent brought suit against Trigg for a community debt owing by him, and obtained a judgment, and on the 18th day of December, 1888, one day before the decree of divorce was granted, he had abstracted and filed his judgment, so as to create a lien against the property of Trigg. After the divorce was granted, he caused an execution to be levied upon the property in controversy, and had the same sold at sheriff's sale.

It appears from the meager statement in the record of the contents of the sheriff's deed that it conveyed only the right, title, and interest then owned by Trigg; and it does not appear from the statements of the deed, as shown in the record, that it conveyed the interest of Mrs. Trigg in the property in controversy.

The effect of the finding of the jury in the case before us is that after charging Trigg with the amounts adjudged against him in the divorce suit, together with interest thereon, it amounted to more than the value of his community interest in the property in controversy. Therefore, taking into consideration the fact that for this amount liens existed against the property in favor of Mrs. Trigg, there was no interest remaining in Trigg to which the judgment lien of plaintiff could attach, and, therefore, nothing remained that could be transferred under the execution sale.

The jury found that the property in controversy was of the value of $2000, and that the incumbrances against it in favor of Mrs. Trigg, as fixed by the judgment for divorce, were $1735.18. In other words, as Trigg's interest was only of the value of $1000, that interest would be entirely absorbed by the amounts owing her by virtue of the judgment in the divorce suit. In order to reach this amount of indebtedness due by Trigg to her, as determined in the decree of divorce, the jury, under the charge of the court, evidently included the $353.35, with interest thereon, which the decree of divorce found to be the value of community property used by Trigg in excess of his one-half interest therein; and also allowed interest on the sum of $644.79, the amount of costs adjudged against Trigg.

The contention of plaintiff in error is that as he is a creditor of the community estate of both Trigg and wife, Mrs. Trigg could not assert against his right in the land acquired under execution sale an interest therein, which the decree of divorce determined she was entitled to, by reason of the fact that her husband had used community property to the value of $353.35 in excess of his half interest. In other words, as Mrs. Trigg's debt arose from the fact that her husband had used more of the community property than his half interest, she would take the community property transferred to her in satisfaction of this claim, charged with the superior right of creditors to subject it to their debts. We think the plaintiff in error correct in this contention. The community estate, while in the hands of either Mrs. Trigg or her husband, or both of them, was liable for the community debts due by them. The

husband and the wife could not, between themselves, so transfer the property from one to the other as to relieve this property from liability for community debts, except where based upon a consideration emanating from one to the other, such, for instance, as the use by one of the separate property or funds of the other, and a lien upon or a transfer given of the community property in order to satisfy that claim. But such is not the case here. Mrs. Trigg acquired no lien on this property in order to secure the payment of a debt due her in her separate interest by her husband; but the lien obtained was for the purpose of securing her in an amount due her from the community estate, by reason of the fact that the husband had used more of the property of that estate than he, upon the final division in the divorce suit, would be entitled to. When Mrs. Trigg took the property under these circumstances, she did not receive it discharged from liability for the community debts owing by her and her husband. If the husband had seen fit, on a settlement between him and his wife, to have transferred to her all of the community property for the sole consideration that he had used more of the community estate than she, it would, nevertheless, have been held by her subject to the claims of community creditors. The wife, under such circumstances, would hold that part of the community estate that she received from her husband by no greater right than she would that portion of the community estate that she would be entitled to on a partition and division of the estate.

Now, it is not pretended, nor could it be successfully urged, that the husband and wife on partition of the community estate in a divorce proceeding, would take their respective shares discharged from the community debts. But, upon the contrary, the law is clear to the effect that the wife, to the extent of the community assets received by her, would be liable for the community debts. In other words, the community estate is a primary fund out of which the debts due by the community should be paid, and it is not in the power of the court in rendering a decree of divorce, where the creditors are not parties to that proceeding, to divest them of all right to hold the community estate liable for their debts, and confer it absolutely and unconditionally upon either the husband or the wife.

With these views, we think it was error in the trial court to permit the jury to consider, in determining in Mrs. Boyd's favor, this item as a charge upon the property. We think it was within the power of the court that rendered the decree of divorce to make the costs that arose in that proceeding a charge against the community interest of Trigg in the property in controversy. The decree in that case was against Trigg for costs, and declared that as to the amounts thereof paid by Mrs. Trigg, or that may be paid by her, she should have a lien upon the community interest of the husband, in order to reimburse her.

In the petition for divorce, which was filed before the plaintiff in error brought his suit or obtained any judgment against Trigg, it was asked that the property rights between Mrs. Trigg and her husband be

settled and litigated. The property of the spouses was there brought into litigation for final settlement in the divorce proceeding. The matter was then lis pendens at the time the plaintiff obtained his judgment, and he obtained it and acquired his subsequent lien, subject to the right of the court in the divorce suit to finally charge the property of either the husband or the wife with the costs of the litigation that arose in that case; and the power of the court to finally charge the community interest of the husband with the costs of the litigation would relate back to the time of the inception of the divorce suit, because the property, by that proceeding, was all brought into controversy, and the court had the power to finally determine whether the property owned by the husband should be responsible for the costs that were taxed against it. The costs were taxed against Trigg and were made a charge against his community interest in the property in controversy.

This the court had the power to do, and the plaintiff in error could not deprive the court, during the pendency of the litigation, of this power, by bringing suit and attempting to fasten a judgment lien on the property in controversy.

Therefore, we are of the opinion that the amount of costs charged against the property for which Mrs. Boyd was also made liable under the judgment and for which she was given a lien for the amount thereof, was a proper charge against the land in controversy, superior to the rights of the plaintiff in error; but it was improper to allow interest on these costs, in computing the sum thereof, which was a charge against the land, except as to the amount of costs that was actually paid by Mrs. Boyd.

The Supreme Court of Pennsylvania, in the case of Galbraith v. Walker, 95 Pennsylvania State, 481, on this question, says: "In the case of Rogers v. Burns, 3 Casey, 328, we said: 'But the court below allowed interest on the judgment for costs. By the common law of England, this is not allowed: 14 Viner's Abr., 457; Sweatland v. Squire, Id., 458; Butler v. Burk, 2 Salk., 623; 3 Jacob's Law Dict., title, Interest. In Pennsylvania the same rule prevails, and the statute allowing interest on judgments is held to apply to the debt alone, and not the costs. 2 Dall., 105, note; McCausland's Admrs. v. Bell, 9 S. & R., 388.'

"In Baum v. Reed, 24 P. F. Smith, 322, we said: 'It is certainly the settled general rule in this State that costs do not bear interest. The best evidence of this is the universal practice of indorsing executions. On the fieri facias or other writ the debt is stated, followed by the date from which interest is to be computed, and then come the costs without rate of interest. Such is the mode of indorsement, no matter how many years have elapsed from the entry of judgment. Even after a revival of the judgment, the same practice is pursued, the first costs being marked as on the original, and the second as on the scire facias.'

"We see no reason for changing the rule thus laid down. We understand it to be the uniform practice in all parts of the State not to allow interest on costs to the officers to whom they are due. There is no

statute, course of decisions, or practice authorizing or justifying such allowance, nor is interest a natural or necessary incident to costs in any view of the subject. Of course, we except from these remarks the case of an actual payment of costs by a party. There, interest may be allowed, as on money paid and expended."

We think this case lays down the correct rule upon this subject, and that the principle there discussed is as much applicable here in this State as in Pennsylvania.

The record shows that Mrs. Boyd has paid about the sum of $110 on the costs. Upon this amount she would be entitled to interest, but not upon the balance of the costs, which have not been paid. This sum, with interest, together with the remaining costs, we think is a superior charge upon the land in controversy to the right held by the plaintiff in error.

We do not determine what right the plaintiff in error would have under his judgment lien in the community interest of Mrs. Boyd in the land in controversy, because it is apparent from the sheriff's deed, under which he holds, as it was executed after the decree of divorce was granted, that it only conveyed in terms the interest of C. L. Trigg. The deed recites: "Conveys the estate, right, title, and interest of C. L. Trigg in the land in controversy in this suit for the sum of $200." It did not pretend to convey the interest of Mrs. Trigg, and, if such had been the case, a different result and a more enlarged finding might have been reached in this court in favor of plaintiff in error.

We can not tell from the record just when the $110 was paid by Mrs. Trigg, and as this fact ought to be ascertained in order to determine just what sum is here due, together with the balance of the costs, so that it could be ascertained with some degree of certainty what amount of the land was subject to plaintiff's execution deed, we therefore are unable to render, but must remand for another trial.

The appellee, Mrs. Boyd, contends, in reply to all of the grounds stated in appellant's assignments of error for reversal, that the property in controversy was her homestead at the time appellant's judgment lien was acquired and at the time the property was sold under the execution sale, and therefore the judgment in her favor could be maintained on this ground.

There is some evidence in the record which tends to show that at the time that appellant Ghent acquired his lien by abstracting and recording his judgment the property may have been used as a homestead; but the facts clearly show, beyond dispute, that at the time of the sale of the homestead under the execution, in October, 1894, the property then had ceased to be used and occupied as the homestead of Mrs. Boyd.

She testifies that in 1892 she married her present husband, J. W. Boyd, and has, since that time, been living with him in Coryell County, and that she and her husband occupied his house in Coryell County, and the facts show that the property in controversy has not been used or occupied by her since her marriage with her present husband as a home. Under the facts, her present homestead would be that of her husband, and such

was the condition of her homestead right at the time that the appellant sold the property at execution sale; she would not be entitled to two homesteads—that occupied by her and her husband, and also the place in controversy. Where she is voluntarily living in the home of her husband, occupying and using it then for the purposes of a home, with no present intention of abandonment and repossessing herself of the property formerly used and occupied as her home, she can not claim that the latter constitutes her homestead. This court has heretofore held in the case of Glasscock v. Stringer, 33 Southwestern Reporter, 678, that if the property is used as a homestead at the time that the judgment was recorded so as to establish the lien, such lien would attach to the property whenever the homestead thereafter wes permanently abandoned. We do not think the appellee has shown a homestead right in the property, in view of the facts in the record.

*Reversed and remanded.*